UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION AT PIKEVILLE

CIVIL ACTION NO. 07-204-HRW

KATHY MOORE,                                                                              PLAINTIFF,

V.           **MAGISTRATE JUDGE'S REPORT
                   AND RECOMMENDATION**

MICHAEL J. ASTRUE,
Commissioner of Social Security,                                                          DEFENDANT.

## I.  INTRODUCTION

Plaintiff, Kathy Moore, brings this action under 42 U.S.C. § 405(g) to challenge the Defendant Commissioner's final decision denying Plaintiff's application for a period of disability, Social Security Disability Insurance Benefits [DIB], Supplemental Security Income [SSI] and Disabled Widow's Benefits. [Tr. 14]. This matter has been referred to the undersigned for preparation of a report and recommendation pursuant to 28 U.S.C. § 636 (b)(1)(B). [R. 10]. Now ripe for decision on the parties' motions for summary judgment, and for the reasons set forth herein, it is recommended that Plaintiff's Motion for Summary Judgment [R. 11] be denied, Defendant Commissioner's Motion for Summary Judgment [R. 13] be granted, and Judgment be entered affirming the final decision of the Commissioner.

## II.  FACTUAL BACKGROUND & PROCEDURAL HISTORY

The Plaintiff was born in 1954 and was 44 years old on the alleged onset date of her disability, which was December 31, 1998. [Tr. 47]. The Plaintiff completed the eighth grade, but has

not received a GED and has no additional education or specialized training. [Tr. 77, 251]. The Plaintiff's prior marriage ended with her husband's death in 1999, and she currently resides alone. [Tr. 54, 79]. She has prior relevant work experience as a cashier and a deli clerk. [Tr. 73]. In this action, the Plaintiff alleges disability as a result of problems with her back and right knee, as well as depression and anxiety. [Tr. 72].

In April of 2005 the Plaintiff filed her application for benefits. [Tr. 47-49, 54-58].[1] Her claims were denied initially and on reconsideration. [Tr. 36-37]. Following the denial, she properly requested a hearing in front of an Administrative Law Judge [ALJ]. On January 9, 2007, a hearing was held in Prestonsburg, Kentucky, before ALJ Charlie Paul Andrus. The Plaintiff was present at the hearing and was represented by counsel, the Hon. Eric C. Conn. During the hearing, a transcript of which was placed in the administrative record, the ALJ sought testimony from the Plaintiff, as well as Anthony Michael, a vocational expert. [Tr. 247-263].

The ALJ ruled against the Plaintiff in a written decision dated February 15, 2007. [Tr. 14-24]. The ALJ found that the Plaintiff has the following severe impairments: "allegations of chronic back pain, degenerative joint disease of the knees a history of open reduction internal fixation of a displaced bicondylar right tibial plateau fracture, and dysthymic disorder. (20 CFR 404.1520(c) and 416.920(c))." [Tr. 17]. Despite these impairments, the ALJ found that "[t]he claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926)." [Tr. 18].

The ALJ also made an express finding as to the Plaintiff's residual functional capacity:

---

[1] The Plaintiff has filed a prior application for benefits, which was denied in June of 2000. [Tr. 14, 68-69].

2

> After careful consideration of the entire record, the undersigned finds that the claimant has had, at all relevant times, the following residual functional capacity: limited to, but capable of, engaging in a restricted range of medium exertional work activity involving lifting and/or carrying of up to but no more than fifty pounds maximum occasionally and twenty-five pounds maximum frequently; occasional climbing, kneeling, crouching, and crawling; and with slight to moderate limitations in attention and concentration; and slight limitations in the ability to remember and carry out instructions, tolerate stress and pressure, and to respond to supervisors and coworkers.

[Tr. 20]. Based on the Plaintiff's residual functional capacity, the ALJ found that the Plaintiff was able to return to her past relevant work, which was classified by the vocational expert as "light exertional unskilled work activity." [Tr. 22]. The ALJ also found, in the alternative, that the Plaintiff has the residual functional capacity "to make a successful adjustment to other work which exists in significant numbers in both the national and regional economies at the medium, light and sedentary exertional levels." [Tr. 22-23].

Following the adverse decision of the ALJ, the Plaintiff properly exhausted her administrative remedies by appealing to the Social Security Appeals Council, which denied her request for review. [Tr. 4-6]. On October 2, 2007, the Plaintiff initiated the present action by filing a complaint with the United States District Court for the Eastern District of Kentucky. [R. 2]. This matter is currently before the Court on the parties' motions for summary judgment. In her Motion for Summary Judgment, the Plaintiff alleges that the ALJ erred by failing to adequately explain his rationale for rejecting certain limitations opined by a consultative examiner, Dr. Jules Barefoot. [R. 11 at 2]. The Defendant Commissioner, through counsel, asserts that the ALJ's decision is supported by substantial evidence and should be upheld. Specifically, the Defendant notes that the ALJ correctly found that the Plaintiff can perform a wide range of work activity at the medium exertional level, and that the Plaintiff did not meet her burden of showing that she was disabled. [R. 13 at 4-5].

### III . STANDARD OF REVIEW

A reviewing court must uphold the findings of the ALJ if they are supported by substantial evidence. 42 U.S.C. § 405(g)(2006); see also, Kirk v. Sec'y of Health & Human Servs., 667 F.2d 524, 535 (6th Cir. 1981). The Sixth Circuit has held that "substantial evidence exists when a reasonable mind might accept the relevant evidence as adequate to support a conclusion." Warner v. Comm'r of Soc. Sec., 375 F.3d 387 (6th Cir. 2004) (internal quotations and citations omitted). The scope of judicial review is limited to the record itself, and the reviewing court "may not try the case de novo, nor resolve conflicts in evidence, nor decide questions of credibility." Hogg v. Sullivan, 987 F.2d 328, 331 (6th Cir. 1993).

The limited nature of substantial evidence review is intended to prevent the reviewing court from substituting its judgment for that of the ALJ. Indeed, so long as substantial evidence exists, the reviewing court should affirm the ALJ's decision "even if there is substantial evidence in the record that would have supported an opposite conclusion." Longworth v. Comm'r Soc. Sec. Admin., 402 F.3d 591, 595 (6th Cir. 2005) (internal quotations and citations omitted). Sixth Circuit precedent suggests that a finding of "no substantial evidence," and potential reversal of the agency decision, would be appropriate in situations where the ALJ: ignores uncontested, compelling evidence for one side; makes no express findings on witness credibility; or makes a ruling based on facts with "little if any evidentiary value." Noe v. Weinberger, 512 F.2d 588 (6th Cir. 1975); see also, Glass v. Sec'y of Health, Educ. & Welfare, 517 F.2d 224 (6th Cir. 1975). Otherwise, if there is substantial evidence to support the ALJ's decision, "it must be affirmed even if the reviewing court would decide the matter differently." Cutlip v. Sec'y of Health & Human Servs., 25 F.3d 284, 286 (6th Cir. 1994).

## IV. ANALYSIS

To determine whether a claimant is "disabled" within the meaning of the Social Security Act, an ALJ undertakes a five-step sequential evaluation process pursuant to 20 C.F.R. §§ 404.1520, 416.920. Step one examines the work activity of the claimant to determine whether she is engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4). Step two is a determination of whether the claimant has a medically determinable "severe impairment" or combination of impairments that qualify as severe. Id. Step three determines whether the claimant's impairments meet the criteria set forth in the regulations to categorize an individual as "disabled." Id. The fourth step examines whether the claimant retains any "residual functional capacity" and whether the claimant can return to her past relevant work. Id. Finally, if the claimant is unable to return to any past relevant work, it must be determined whether she has the residual functional capacity to do any other work. Id. The burdens of proof involved in this process were summarized by the Sixth Circuit Court of Appeals in Jones v. Comm'r of Soc. Sec., 336 F.3d 469 (6th Cir. 2003):

> Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work, but at step five of the inquiry...the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile.

Jones, 336 F.3d at 474 (internal citations omitted).

In the present case, the ALJ engaged in the sequential evaluation and determined at step four of the analysis that, despite having several severe impairments, the Plaintiff had a sufficient residual functional capacity to return to her past relevant work. [Tr. 22]. Since the ALJ found that the Plaintiff had not met her burden of showing that she was unable to return to her past relevant work, the ALJ

did not need to continue to the fifth step of the analysis. Nevertheless, the ALJ noted that, in the alternative, "the claimant also retains the residual functional capacity to make a successful adjustment to other work which exists in significant numbers in both the national and regional economies at the medium, light and sedentary exertional levels." [Tr. 22-23].

The outcome of Plaintiff's current case turns upon whether the ALJ committed reversible error by failing to adequately explain why his residual functional capacity didn't expressly include a repetitive bending limitation noted in a June, 2005 examination by Dr. Jules Barefoot. [Tr. 144-49]. In the report issued following said examination, Dr. Barefoot, a consultative examiner, stated as follows:

> she was noted to have a moderate amount of edema and warmth present in her right knee as well as inability to fully flex her knee beyond 120 degrees on the right. She was poorly able to squat.
>
> This examinee is able to sit and stand. *Her ability to repetitively bend, squat, crawl, and climb does appear to be impaired on the basis of her previous right tibial plateau fracture with diminished range of motion in her right knee.* She is able to hear, see, speak and understand normal conversational speech. Her gait was minimally antalgic, but she was able to ambulate without the use of an assistive device. Her ability to grossly and finely manipulate objects did appear to be normal.

[Tr. 147 (emphasis added)]. This examination occurred approximately four months after the Plaintiff had surgery for a tibial plateau fracture. [Tr. 131-32]. The Plaintiff argues that her residual functional capacity should have included a limitation based on Dr. Barefoot's assessment regarding the Plaintiff's ability to repetitively bend and squat. [R. 11 at 3].[2] It is the Plaintiff's contention that if

---

[2] The residual functional capacity states that the Plaintiff is able to engage in "occasional" bending, [Tr. 20], while Dr. Barefoot opined that the Plaintiff was restricted from "repetitive" bending. [Tr. 147]. The ALJ's decision that the Plaintiff could occasionally bend is not necessarily inconsistent with Dr. Barefoot's restriction on repetitive bending. However, for purposes of the present analysis, the Court will accept Plaintiff's assertion that this is an inconsistency.

6

this limitation had been included in the residual functional capacity, the ALJ *may* have found that the Plaintiff was unable to perform her past relevant work. [R. 11 at 6, note 3]. The Defendant counters by noting, among other things, that none of the postural limitations stated by Dr. Barefoot were identified as being required by Plaintiff's former work. [R. 13 at 6].

The Plaintiff's claim turns on whether the ALJ erred in making his residual functional capacity analysis. The ALJ is responsible for assessing a claimant's residual functional capacity by examining all the evidence in the record. 20 C.F.R. §§ 404.1545(a)(3), 404.1546(c); see also, Bingaman v. Comm'r of Soc. Sec., 186 Fed. Appx. 642, 647 (6th Cir. 2006) (unpublished) ("[t]he ALJ is ultimately responsible for determining a claimant's RFC based on relevant medical and other evidence in the record.").The decision regarding a claimant's residual functional capacity is expressly reserved for the Commissioner, not physicians. Ford v. Comm'r of Soc. Sec., 114 Fed. Appx. 194, 198 (6th Cir. 2004) (unpublished). When an ALJ is faced with conflicting evidence in the record, including the credibility of witnesses, the ALJ obviously must make decisions regarding which evidence to accept. King v. Heckler, 742 F.2d 968, 974 (6th Cir. 1984).

The Plaintiff's argument turns on a perceived deviation between the opinion of a consulting physician and the ALJ's ultimate finding regarding residual functional capacity; however, the Plaintiff cites to no other physician in the record that placed such a postural limitation on the Plaintiff. The ALJ expressly noted that the Plaintiff "has not required any further surgical interventions since 2005 and treatment for associated knee residuals is very limited since that time." [Tr. 18]. Furthermore, he stated "there is no indication within the record that any treating physician has imposed any type of permanent work-related limitation." [Tr. 21]. In fact, in a follow-up examination just two months after surgery, the Plaintiff's treating physician noted that the Plaintiff

7

"lacks just a few degrees of full extension and flexed well past 90 [degrees]. No instability of the knee. No effusion or swelling." [Tr. 137].

The Plaintiff correctly notes that social security rulings and regulations deserve deference, and must be followed. [R. 11 at 2]. The Plaintiff believes that the ALJ failed to abide by regulations when he formulated the Plaintiff's residual functional capacity. An ALJ's decision can be reversed where the ALJ fails to explain his reasons for a dramatic deviation from Social Security Regulations. See Bowen v. Comm'r of Soc. Sec., 478 F.3d 742 (6th Cir. 2007); see also, SSR 96-8p. For example, Bowen involved the interpretation of 20 C.F.R. § 404.1527(d), which sets forth very clear procedures for how the opinions of treating sources must be handled. The ALJ in Bowen "completely fail[ed] to acknowledge the expert opinion of...treating psychologist" Id. at 747, and his failure to do so warranted reversal. The rationale behind Bowen and similar cases is that a decision should not be upheld "where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." Id. at 746.

No such prejudice has, or can, be shown in the present case. The ALJ cited the medical record extensively when making his decision regarding the severity of the limitations imposed by the Plaintiff's knee problem. For example, the ALJ noted that no treating source has imposed permanent, work-related limitations on the Plaintiff. [Tr. 21]. He also cited the fact that approximately three months after her surgery, the Plaintiff was found to be "doing pretty well," despite nighttime pain in the leg. [Tr. 210]. Furthermore, he observed "[t]here is no documentation of more aggressive pain management or referral, and no history of surgical intervention aside from prior knee surgery." [Tr. 22]. Finally, he also made the following finding regarding the Plaintiff's credibility:

> In assessing the claimant's overall credibility, the undersigned notes some non-compliance with treatment recommendations and modalities during the relevant time period. On recent presentation, the undersigned found her subjective accounts to be quite exaggerated and her descriptions very vague. The degree of functional limitation she describes is very disproportionate to the objective clinical findings of record as well as her history of conservative treatment, and she has had minimal alternative treatment during the relevant time period under adjudication.

[Tr. 21]. Simply stated, the ALJ's decision to disregard a small portion of a non-treating physician's opinion when formulating the residual functional capacity does not warrant reversal. This is particularly true where the Plaintiff is unable to provide any other objective medical evidence to support postural limitations of the severity she alleges. The ALJ made a decision based on conflicting evidence within the record, and supported his decision with ample citations to the record, as well as findings regarding the credibility of the Plaintiff's allegations of pain. An ALJ's resolution of conflicting evidence, supported by substantial evidence should not be disturbed. See Dykes ex. rel. Brymer v. Barnhart, 112 Fed. Appx. 463 (6th Cir. 2004).

Furthermore, even if the ALJ erred by not including the limitation, the Plaintiff concedes that the failure would not preclude a finding that the Plaintiff can return to her past relevant work. [R. 11 at 6, note 3]. The record contains no evidence showing that the repetitive bending restriction would preclude the Plaintiff from performing her past relevant work as a cashier or deli clerk. Under the five-step sequential analysis, the Plaintiff has the burden of showing that she is unable to return to her past relevant work. Jones, 336 F.3d at 474. Because the Plaintiff did not show that the bending restriction would preclude her from returning to her past relevant work, even if the ALJ erred by not including the bending restriction, such an error would be harmless, and remand would be inappropriate.

In addition to the reasons stated above, the ALJ noted that in the alternative, even if the Plaintiff could not return to her past work, she could adjust to other work. [Tr. 23]. In addition to work at the medium exertional level, the vocational expert opined that the Plaintiff could perform large numbers of jobs at both the light and sedentary exertional levels. [Tr. 23-24]. Presumptively, the occupational base at the light and sedentary levels would not be significantly eroded by the restriction urged by the Plaintiff in this action. The fact that there are large numbers of jobs in the national economy that the Plaintiff can perform, would also preclude a finding that the Plaintiff is disabled. As stated by Judge Posner of the Seventh Circuit, "[n]o principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result." Fisher v. Bowen, 869 F.2d 1055, 1057 (7th Cir. 1989). Even assuming that the ALJ committed an error, remand is inappropriate, as there is no reason to believe that remand of this action would lead to a different result.

## V. CONCLUSION

For the foregoing reasons, it is recommended that the Plaintiff's Motion for Summary Judgment [R. 11] be denied, the Defendant Commissioner's Motion for Summary Judgment [R. 13] be granted, and that Judgment be entered affirming the final decision of the Commissioner.

Specific objections to this Report and Recommendation must be filed within ten days from the date of service thereof or further appeal is waived. United States v. Campbell, 261 F.3d 628, 632 (6th Cir. 2001); Bituminous Cas. Corp. v. Combs Contracting Inc., 236 F. Supp. 2d 737, 749-750 (E.D. Ky. 2002). General objections or objections that require a judge's interpretation are insufficient to preserve the right to appeal. Cowherd v. Million, 380 F.3d 909, 912 (6th Cir. 2004); Miller v. Currie, 50 F.3d 373, 380 (6th Cir. 1995). A party may file a response to another party's

objections within ten days after being served with a copy thereof. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).

Signed April 25, 2008.

Signed By:
*Edward B. Atkins*   *EBA*
**United States Magistrate Judge**